IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAMONE N. WILLIAMS, )<br>)<br>Defendant. ) | Criminal Action No.<br>15-00257-01-CR-W-GAF |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

Before the court is Defendant's motion to suppress physical evidence. Defendant moves the Court to suppress all evidence obtained from the July 15, 2015 traffic stop based on Fourth Amendment violations. For the following reasons, Defendant's motion should be denied.

## *I. BACKGROUND*

An indictment was returned on July 29, 2015, charging Defendant with one count of being a felon in possession of a firearm, one count of possessing stolen firearm, and one count of possessing a firearm with an obliterated serial number. On February 2, 2016, Defendant filed a motion to suppress (Doc. No. 20). The government responded on February 25, 2016 (Doc. No. 22). An evidentiary hearing was held on March 7, 2016. The government appeared by Assistant United States Attorney Bruce Rhodes. Defendant was present, represented by retained counsel Angela Hasty. The government called Kansas City, Missouri Police Department Sergeant Howard Periman to testify. The following exhibits were admitted into evidence:

    Government's Exhibit 1:    Disc 1 of 2 containing all videos of July 15, 2015 car stop;
    Government's Exhibit 2:    Disc 2 of 2 containing all videos of July 15, 2015 car stop.

1

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. On July 15, 2015, Howard Periman was a traffic enforcement officer with the Kansas City, Missouri Police Department (Tr. at 4).[1] As a traffic enforcement officer, Sergeant Periman was trained to be able to visually recognize a vehicle's speed within three miles per hour (Tr. at 7). In order to be certified to conduct radar or LiDAR laser enforcement,[2] an officer must visually recognize a vehicle's speed with 70% accuracy (Tr. at 7).

2. Sergeant Periman has been with the Kansas City, Missouri Police Department for approximately twenty years (Tr. at 13). In 2015 alone, he conducted 3,000 traffic stops (Tr. at 14).

3. At approximately 6:14 p.m. on July 15, 2015, Sergeant Periman was checking the speed of vehicles traveling westbound on Bannister approaching Lydia (Tr. at 4-6). He was in a marked patrol car (Tr. at 6). Sergeant Periman observed Defendant driving at what he believed to be approximately 60 miles per hour in a 40 mile-per-hour zone (Tr. at 6-7). He used LiDAR to verify that speed, which returned a recording of 62 miles per hour (Tr. at 7).

4. Sergeant Periman moved his patrol car into the intersection to initiate a traffic stop (Tr. at 7; Gvt. Exh. 1, video 4605@20150715180745 at 6:12:35 pm).

---

[1] He has since been promoted to a patrol sergeant, and will be referred to as "Sergeant Periman" throughout this Report & Recommendation.

2 Radar uses radar waves or radio wave frequency waves to measure the speed of a vehicle in a specific area, but not an individual vehicle; laser targets an individual vehicle (Tr. at 5).

2

Defendant stopped at the intersection and briefly looked at Sergeant Periman with a nervous look on his face (Tr. at 7, 30). Defendant then turned left onto Lydia (Tr. at 7).

5. Sergeant Periman proceeded through the intersection and activated his emergency lights (Tr. at 7). He followed Defendant at a speed of 7-10 miles per hour for approximately sixty seconds or a quarter of a mile (Tr. at 7, 8, 9, 20). Sergeant Periman testified this was an undue amount of time for a vehicle traveling at that speed to stop (Tr. at 20-21). During this time, Defendant's vehicle moved to the right and left over the yellow line and almost struck the curb twice; there was oncoming traffic (Tr. at 7-8 Gvt. Exh. 1, video 4605@20150715180745 at 6:12:46 pm – 6:13:45 pm). Sergeant Periman could tell Defendant was reaching into the right side of the vehicle, particularly between the passenger's seat and the console area (Tr. at 8, 9, 20, 25).

6. Defendant eventually stopped his vehicle (Tr. at 8-9; Gvt. Exh. 1, video 4605@20150715180745 at 6:13:35 pm).

7. Sergeant Periman immediately called for back-up (Tr. at 21, 27). He then exited his vehicle and asked Defendant twice to shut off the vehicle (Tr. at 11, 21-22; Gvt. Exh. 1, video 4605@20150715180745 at 6:14:11 pm – 6:14:18 pm). He also asked Defendant to put the keys on the top of the vehicle (Tr. at 11, 22; Gvt. Exh. 1, video 4605@20150715180745 at 6:14:20 pm – 6:14:33 pm). Once Defendant had done so, Sergeant Periman approached the vehicle (Tr. at 11; Gvt. Exh. 1, video 4605@20150715180745 at 6:14:54 pm). Sergeant Periman placed Defendant in handcuffs, conducted a frisk to make sure Defendant did not have any weapons on his person and sat him on the sidewalk beside the patrol vehicle (Tr. at 11, 22, 27; Gvt. Exh. 1, video 4605@20150715180745 at 6:15:28 pm – 6:16:21 pm). Defendant was not free

to leave (Tr. at 28).

8. Sergeant Periman did not ask Defendant why he had been reaching into the passenger-side area (Tr. at 23, 26-27).

9. Sergeant Periman also removed the passenger from the vehicle, handcuffed him and sat him on the sidewalk (Tr. at 12).

10. Based on the fact that Defendant took a long time to pull over, the manner in which the vehicle was driven after the stop was initiated and Defendant's movements inside the vehicle, Sergeant Periman believed Defendant was hiding some type of contraband (Tr. at 12, 17). His past experiences confirmed that when drivers are slow to pull over and make actions similar to those made by Defendant, they are attempting to hide or retrieve contraband – specifically weapons – to use against law enforcement (Tr. at 12, 31).

11. Once back-up arrived, Sergeant Periman performed a search of Defendant's vehicle (Tr. at 15). He found $3,670 cash in the center console; a firearm, cell phone and ammunition in the passenger's area where Defendant had been reaching; and two additional firearms in the glove compartment (Tr. at 15-16).

12. Sergeant Periman learned Defendant had been convicted of a felony, advised detectives of the circumstances of the stop, and then placed Defendant under arrest (Tr. at 30-31).

13. Sergeant Periman decided to tow Defendant's vehicle and performed an inventory search so as to document any property in the vehicle (Tr. at 17). Officers located marijuana shake in the trunk of the vehicle (Tr. at 17).

14. Between thirty and forty minutes after the stop was initiated, Defendant

4

was placed in a patrol wagon (Tr. at 30; Gvt. Exh. 1, video 4605@20150715180745 at 6:39:00 pm). When Defendant was escorted to the wagon, he made the following statement regarding the passenger: "That's my cousin, he didn't have anything to do with this, he was just getting a ride." (Tr. at 19).

### III. LEGAL ANALYSIS

Defendant maintains Sergeant Periman lacked reasonable suspicion to conduct a Terry stop, did not have probable cause for an arrest and that Defendant's detention was unreasonably prolonged. Based on these alleged illegalities, Defendant argues that the evidence found as a direct result of the stop, as well as his subsequent statement, should be suppressed. I disagree.

The encounter challenged by Defendant began when Sergeant Periman observed Defendant driving twenty-two miles per hour over the speed limit on Bannister. An officer "who sees a traffic violation has probable cause to stop the vehicle." United States v. Williams, 431 F.3d 296, 298 (8th Cir. 2005).

After the traffic stop had been initiated, Defendant continued to drive at 7-10 miles per hour for approximately sixty seconds or a quarter of a mile. During this time, Defendant swerved back and forth, crossing over the yellow line and almost striking the curb twice. Sergeant Periman observed Defendant reaching into the right side of the vehicle, particularly between the passenger's seat and the console area. Based on these actions, Sergeant Periman decided he was going search the vehicle.

"A law enforcement officer may detain a person for investigation without probable cause to arrest when the officer 'has reasonable suspicion supported by articulable facts that criminal activity "may be afoot."'" United States v. Morgan, 729 F.3d 1086, 1089 (8th Cir. 2013)(quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)(quoting Terry v. Ohio, 392 U.S. 1,

5

30 (1968)). "'Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances.'" Id. (quoting United States v. Garcia, 23 F.3d 1331, 1134 (8th Cir. 1994)). Furtive gestures under a seat have been found to constitute reasonable suspicion. Id. at 1090. "Once reasonable suspicion is established, law enforcement officers may conduct a protective search of a vehicle's interior, whether or not the occupants have been removed from the vehicle, because 'if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.'" Id. at 1089-90 (quoting Michigan v. Long, 463 U.S. 1032, 1052 (1983)).

Sergeant Periman had reasonable suspicion to detain Defendant under Terry and search the vehicle. Sergeant Periman is an experienced officer who has conducted thousands of traffic stops. In his past experience, drivers who are slow to pull over and make reaching gestures into the passenger area are attempting to hide or retrieve contraband – specifically weapons – that may be used against law enforcement. This experience, coupled with Defendant's nervous look at the intersection, the amount of time Defendant took to pull over while traveling at a slow speed, the manner in which Defendant drove the vehicle, and Defendant's reaching movements, constitute reasonable suspicion.

Defendant argues that because he was stopped for speeding, his continued detention during the search and investigation exceeded its initial purpose and was thus unreasonable. "The scope of a Terry stop is limited, and an investigatory detention 'may turn into an arrest if it lasts for an unreasonably long time." Id. at 1090. In making this determination, courts consider whether law enforcement "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Id. (quoting United States v. Sharpe, 470 U.S. 675,

6

686 (1985)). "There is no bright line rule; instead, 'common sense and ordinary human experience must govern over rigid criteria.'" Id. (quoting Sharpe, 470 U.S. at 685). "Police officers reasonably may handcuff a suspect during the course of a Terry stop to protect their personal safety." Id. at 1091.

After Defendant and the passenger were secured, Sergeant Periman searched the vehicle. Sergeant Periman found three firearms in the vehicle – one in the passenger's area where Defendant had been reaching and two in the glove compartment. Defendant's detention was justified while Sergeant Periman then sought information about Defendant's criminal history and conveyed that information to detectives. Sergeant Periman testified, and review of the dash cam confirms, that the total stop was between thirty and forty-five minutes from the time of the stop until Defendant was placed in the patrol wagon. This was not an unreasonably long period of time.

Upon learning that Defendant had a previous felony conviction, probable cause existed to place Defendant under arrest. See United States v. Castleman, 795 F.3d 904, 913 (8th Cir. 2015)("a warrantless arrest satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing an offense"); 18 U.S.C. § 922(g)(1). Officers lawfully performed an inventory search of the vehicle before it was towed. See United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011).

### IV.  CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from

the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 16, 2016